1

```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF GEORGIA
 2                          SAVANNAH DIVISION

 3

    UNITED STATES OF AMERICA,    )
 4                               )
             Plaintiff,          )
 5                               )
        vs.                      )    CASE NO. 4:18-CR-00064
 6                               )
    PABLO RANGEL-RUBIO,          )
 7                               )
             Defendant.          )
 8  -----------------------------

 9

10

11

12            TRANSCRIPT OF SENTENCING HEARING
          BEFORE THE HONORABLE WILLIAM T. MOORE, JR.
13                   United States Courthouse
                         125 Bull Street
14                        Savannah, GA
                          July 6, 2018
15

16

17

18

19  COURT REPORTER:    Kelly A. McKee, CCR, RMR, CCP
                       United States Court Reporter
20                     P. O. Box 8552
                       Savannah, GA  31412
21                     912-650-4065

22

23     (Proceedings reported by mechanical stenography, transcript
    produced by computer-aided transcription.)
24

25
```

```
 1                    APPEARANCES OF COUNSEL

 2   FOR THE UNITED STATES OF AMERICA:

 3       TANIA D. GROOVER, ESQ.
         U.S. ATTORNEY'S OFFICE - SAVANNAH
 4       P.O. Box 8970
         22 Barnard Street, Suite 300
 5       Savannah, GA 31401
         912-201-2552
 6       Fax: 912-652-4388
         Email: Tania.groover@usdoj.gov
 7
     FOR THE DEFENDANT:
 8
         JOSEPH JAMES BERRIGAN, Esq.
 9       JOSEPH J. BERRIGAN, P.C.
         355-D Commercial Drive
10       Savannah, GA  31406
         912-236-9818
11       Email:  Jjamberr@yahoo.com

12   INTERPRETER:

13       WILFRIDO CHAVEZ

14

15

16

17

18

19

20

21

22

23

24

25
```

3

**P R O C E E D I N G S**

**(3:30 p.m.)**

THE COURT: Good afternoon. Call the case, please, Ms. Bodaford.

THE CLERK: Yes, Your Honor. The Court calls the case of the *United States of America vs. Pablo Rangel-Rubio*, Case Number CR 4:18-64. Representing the government is Tania Groover. Representing the defendant is Joseph Berrigan. This case is called for sentencing.

MS. GROOVER: The government is ready to proceed, Your Honor.

MR. BERRIGAN: Defendant's ready, Your Honor.

THE COURT: I believe we have Mr. Chavez here as the interpreter. Would you please swear the interpreter.

THE CLERK: Yes, Your Honor. Please raise your right hand.

(Interpreter sworn)

THE INTERPRETER: I do.

(As indicated, the following hearing was conducted through the Spanish-speaking interpreter, unless noted otherwise.)

THE CLERK: Thank you.

THE COURT: Mr. Berrigan, if you and Mr. Rangel-Rubio would come forward to the lectern with Mr. Chavez, please.

Mr. Pablo Rangel-Rubio, you appeared before this Court on May 21, 2018, accompanied by your attorney, Mr. Joseph

4

1  Berrigan, for a Rule 11 proceeding.  On that date, pursuant to a
2  plea agreement with the government, you pled guilty and you were
3  adjudged guilty of Count 1 of an indictment charging you with
4  possession of firearms by a prohibited person, in violation of
5  18 United States Code Section 922(g)(5).  Upon completion of the
6  Rule 11 proceeding and the Court's acceptance of the guilty
7  plea, the Court directed the United States Probation Office to
8  prepare a presentence report and upon completion to disclose
9  that report to you and to your counsel and to counsel for the
10 government.
11         I ask you at this time, Mr. Rangel-Rubio, have you had
12 an opportunity to read and discuss the presentence report and
13 any addendum with your lawyer?
14         THE DEFENDANT:  Yes.
15         THE COURT:  Do you or Mr. Berrigan have any objections
16 to either the factual accuracy of the report or to the probation
17 officer's application of the Sentencing Guidelines?
18         THE DEFENDANT:  No.
19         THE COURT:  There being no objections to the factual
20 statements or to the probation officer's conclusions as to the
21 applicable Advisory Guidelines contained in the presentence
22 investigation report, the Court adopts those facts and
23 conclusions.
24         Accordingly, the Court determines that the applicable
25 Advisory Guidelines are a total offense level of 12, criminal

1  history category I, 10 to 16 months of imprisonment, one to
2  three years of supervised release, a $5,500 to a $55,000 fine,
3  no restitution and a $100 special assessment.
4         Mr. Berrigan, do you now wish to make any statement or
5  present any information in mitigation of sentence?  And I will
6  state before you begin that I have read the sentencing
7  memorandum that you've filed on behalf of your client, and I
8  have read all of the numerous letters from family, friends and
9  coworkers that are attached to that memorandum.  But if there's
10 anything else that you wish to add, please do so.
11        MR. BERRIGAN:  No, Your Honor.  I think that memorandum
12 pretty much -- if I was to say it here, it would be the same
13 thing as what's in that memorandum.  He's been here for a long
14 time, a good employee and has many friends and has a young
15 family here.  They're all U. S. citizens.  So that's pretty much
16 stated in that memorandum that he presented.
17        THE COURT:  Well, it appears from the PSI that the
18 defendant first entered the United States illegally sometime
19 around 1990, and in 1999 he was discovered in the United States,
20 and he voluntarily went back to Mexico.  Then apparently he
21 reentered the United States again, and in 2002 he voluntarily
22 went back to Mexico.
23        I'm not sure when after 2002 he came back into the
24 United States again.  I'm not sure that the PSI shows when he
25 came back again.  But he obviously did come back again and came

6

back without the permission of the United States Government and was here illegally possessing the firearm which is a result of his arrest in this case.

There's also some other troubling aspects about this case. It's troubling that the property which all of these people were living on apparently was in the name of Mr. Pablo Rangel. There is a Pablo Rangel that appears to be a son of Mr. Rangel-Rubio, but he is 24 years old and he lives in Mexico, and as far as the PSI shows, he's not the person that was the property owner. There was a person apparently in Maryland that went by the name of Pablo Rangel who was purported to be 24 years of age, and the Social Security Number for that individual showed that that individual was deceased.

Apparently the tax records in Effingham County show that the property in question, the acres in question where all these trailers and things were was in the name of someone named Pablo Rangel. It's alleged in the PSI that Mr. Pablo Rangel-Rubio also goes by the name of Pablo Rangel.

Also, shortly after the defendant's arrest in this case the property, the acreage was transferred to a woman that Mr. Pablo Rubio apparently has been living with and is the mother of his children. And but I'm not sure who signed that instrument. I'm not -- it was done by a quitclaim deed. I don't know whether the person who transferred it to her was your client, Mr. Berrigan, or whether it was some other person that

1  was named Pablo Rubio.  And perhaps you can clarify that for the
2  Court.
3           MR. BERRIGAN:  Yes, I can, Your Honor.  I prepared that
4  deed.  It was a gift deed from Mr. Rubio to his wife, Pablo's
5  wife, his common-law wife, and the reason for that he was in the
6  custody of the United States Customs and Immigration Service,
7  and he agreed to be deported.  And so he didn't know what was
8  going to happen to the property because he's not going to be
9  able to sell it from Mexico or give it away or whatever.
10          So at my suggestion I suggested since his wife and his
11 children were living there, that he give it to her and let her
12 dispose of it when and if she decided to leave the country,
13 because it really didn't have anything to do with this case,
14 because at the time of that advice he wasn't under a federal
15 indictment.
16          THE COURT:  Well, but let me refer you to Paragraph 45
17 on Page 8 of the presentence investigation report which states
18 that the Rincon, Georgia property is listed on a national report
19 as belonging to Pablo Rangel, age 24, with a United States
20 Social Security Number in Maryland and that that Social Security
21 Number belongs to a person reported as being deceased.  So how
22 did your client's property in Effingham County, in Rincon, end
23 up in the name of a Pablo Rangel, age 24, with a false Social
24 Security Number?
25          MR. BERRIGAN:  I don't know, Your Honor.  I don't have

8

1  any information about that at all.  He bought the property
2  through Mr. Dyches, who was the closing attorney, and I didn't
3  have any involvement in that.  I don't know anything about the
4  Social Security Number or a Pablo Rangel in Maryland.  I just
5  don't -- I don't have any information on that.
6      He's owned it for approximately two years now, long
7  before I ever got involved in this.  I don't have any
8  information on that.  I'm sorry, Your Honor.
9      THE COURT:  Well, there are also some other troubling
10 things in the presentence investigation report that are
11 allegations that at least at this point appear to be unproven.
12 I'm assuming that the authorities are investigating those
13 allegations, but I refer to the allegations that
14 Mr. Rangel-Rubio was furnishing people with false
15 identifications and was selling false identifications to those
16 people, and that was verified by two people.  Then the PSI just
17 sort of drops that.  I'm assuming that there's some
18 investigation going on about that.  But that is also troubling
19 to the Court.
20      Anything else you wish to present, Mr. Berrigan?
21      MR. BERRIGAN:  No, Your Honor.
22      THE COURT:  Does the government wish to present any
23 information as to the appropriate sentence, Ms. Groover?
24      MS. GROOVER:  Thank you, Your Honor.  The government
25 concurs with Probation that a sentence at the top end of the

1   Guidelines would be appropriate in this case, given all of the
2   defendant's -- the information that's going on in this
3   particular case.
4       This case stemmed from a homicide investigation; and
5   concerns that Your Honor pointed out, there were at least two
6   witnesses that provided information that the defendant was
7   selling fake identities for individuals to be working in the
8   United States illegally.  And then when law enforcement went to
9   execute a search warrant on his property, found some evidence
10  that there were illegal aliens living on his property, from his
11  main trailer as well as multiple campers, and throughout those
12  dwellings there were 14 firearms.  And so based on the
13  defendant's entire criminal conduct of his employment scheme and
14  harboring illegal aliens, the government would suggest that a
15  sentence at the top end of the Guidelines would be appropriate.
16      THE COURT:  Thank you, Ms. Groover.
17      Mr. Rangel-Rubio, the law provides that you have the
18  right to make any personal statement to the Court before the
19  imposition of sentence.  Is there any personal statement that
20  you wish to make or any additional information that you wish the
21  Court to consider in mitigation of your sentence?
22      THE DEFENDANT:  No.
23      THE COURT:  I've listened to the defendant and the
24  defendant's counsel.  I've also listened to counsel for the
25  government.  I've reviewed the presentence investigation report,

10

1  and I've also reviewed the sentencing memorandum and the
2  attached letters to that memorandum.  I've considered the
3  factors set forth at 18 United States Code Section 3553(a).
4         Pursuant to the Sentencing Reform Act of 1984, it is the
5  judgment of the Court that the defendant, Pablo Rangel-Rubio, is
6  hereby committed to the custody of the Bureau of Prisons to be
7  imprisoned for a term of 16 months, to be served consecutively
8  to any sentence which may be imposed on his pending unrelated
9  state charge.
10        Upon release from confinement, the defendant shall be
11 delivered to a duly authorized Immigration and Customs
12 Enforcement officer for deportation proceedings.  It's
13 recommended that the defendant be given credit toward this
14 federal sentence for all time served in custody since August 20,
15 2017, that is not credited toward another sentence.
16        The Court finds no reason to depart from the sentence
17 called for by application of the Advisory Guidelines inasmuch as
18 the facts found are the kind contemplated by the Sentencing
19 Commission.
20        It's recommended that the defendant be evaluated by
21 Bureau of Prisons officials to establish his participation in an
22 appropriate program of substance abuse treatment and counseling
23 during his term of incarceration.
24        The defendant does not have the ability to pay a fine
25 within the guideline range; however, the Court has considered

1   the factors set forth in United States Sentencing Guidelines
2   Section 5E1.2(d) and finds that the defendant does have the
3   ability to pay a fine in the sum of $2,000, which is payable
4   immediately, and payment is to be made payable to the Clerk of
5   the United States District Court.
6         It is further ordered that defendant shall pay to the
7   United States a special assessment of $100, which shall be due
8   immediately.
9         Pursuant to the plea agreement, the defendant shall
10  forfeit his interest in any firearms and ammunition involved or
11  used in the knowing commission of the offense to which he has
12  agreed to plead guilty.
13        Upon release from imprisonment, the defendant shall be
14  placed on supervised release for a term of three years; and
15  while on supervised release, the defendant shall comply with the
16  standard conditions of supervision adopted by this Court and the
17  mandatory conditions required by 18 United States Code Section
18  3583, which will include, but not be limited to, urine testing,
19  a prohibition against the possession of any firearm or other
20  dangerous weapon and a prohibition against the violation of any
21  local, state or federal law; and further, the defendant shall
22  cooperate in the collection of a DNA sample as directed by the
23  probation officer pursuant to 18 United States Code Section
24  3583.
25        While on supervised release, the defendant shall comply

12

1  with certain special conditions imposed by the Court, and the
2  Court has considered the factors set forth in 18 United States
3  Code Section 3553 and 3583 and the relevant policy statements
4  issued by the Sentencing Commission and has determined that
5  these special conditions involve no greater deprivation of
6  liberty than is reasonably necessary to achieve the purposes of
7  sentencing.  And the following special conditions are imposed:
8            If the defendant is ordered deported from the United
9  States, the defendant shall remain outside of the United States
10 unless legally authorized to reenter.  If the defendant reenters
11 the United States, the defendant must report to the nearest
12 probation office within 72 hours after the defendant returns.
13 If not deported, the defendant must report to the nearest
14 probation office within 72 hours of release from custody.
15           The probation officer is hereby directed to provide the
16 defendant with a written statement which sets forth all the
17 conditions to which the term of supervised release is subject.
18           The Court has accepted the plea agreement because it's
19 satisfied that the agreement adequately reflects the seriousness
20 of the actual offense behavior and that by accepting the plea
21 agreement it will not undermine the statutory purposes of
22 sentencing.
23           When I said the actual offense behavior, I'm talking
24 about the behavior of being an illegal in possession of a
25 firearm.  I'm not alluding to the other behavior in this case.

13

1    In accordance with the plea agreement, it is ordered
2    that Count 2 of the indictment be dismissed.  It is further
3    ordered the defendant is remanded to the custody of the United
4    States Marshal.
5         Mr. Berrigan, any designated institution that you wish
6    me to recommend to the Bureau of Prisons, if you'll let the
7    Probation Office know, I will make that recommendation in the
8    final judgment and commitment in this case.
9         Mr. Rangel-Rubio, you're now advised it is your right to
10   appeal from this sentence within 14 days from this date, and a
11   failure to appeal within the 14-day period shall be a waiver of
12   your right of appeal; and the government may file an appeal of
13   this sentence.  You're also advised that you're entitled to the
14   assistance of counsel in taking an appeal.  If unable to afford
15   a lawyer, one will be provided for you; and if you so request,
16   the Clerk of Court will prepare and file a notice of appeal on
17   your behalf.
18        Mr. Berrigan, you've been furnished with a notice of
19   your post-conviction obligation to consult with your client, and
20   you and Mr. Rangel-Rubio are directed to execute the form and to
21   promptly file it with the Clerk of this Court.
22        Sentence has been pronounced.  Do you now have any
23   objections to the Court's findings of fact, conclusions of law
24   or the manner in which the sentence was pronounced?  Any from
25   the defendant, Mr. Berrigan?

14

1    MR. BERRIGAN:  No, Your Honor.

2    THE COURT:  Any from the government?

3    MS. GROOVER:  No, Your Honor.

4    THE COURT:  Before we leave here, I want to put on the record in this case that this is a troubling issue.  It's troubling that this piece of property over in Rincon, Georgia contained numerous illegals living on the property.  It's troubling that apparently this defendant knew that.  It's troubling as to all the firearms that were recovered from that property that should not have been apparently possessed by anyone who was living on that property, certainly not possessed by any of the people who were not legal.

It's also troubling that Mr. Rangel-Rubio and apparently some of the other people who were not legal that were living on that property worked for years for what has been described as Wolf Tree, Inc.  In fact, Mr. Rangel-Rubio had worked for them so long and apparently been such a good worker he was a supervisor of other people.

I suspect, without knowing, that Wolf Tree, Incorporated hired many other people and may still be hiring many other people, other than this defendant, who are not properly documented.  I suspect that Wolf Tree, Inc. is not paying any Social Security taxes to the United States on the wages that they pay to these people.  I suspect that Wolf Tree, Inc. is also not paying any state of Georgia unemployment taxes on the

15

1  wages of these people.
2          And I don't know who with the government is responsible
3  for investigating this situation.  I mean it's employers who
4  continuously hire undocumented aliens and continuously, you
5  know, don't pay the Social Security to the United States
6  Government, don't pay the unemployment, don't do all those
7  things that most companies in the United States are required to
8  do.
9          And you know, I see these cases too many times in this
10 court.  But now, many of the letters in the sentencing
11 memorandum talk about the defendant in this case and his work
12 and that he was supervising some of these people, many of the
13 people apparently that wrote the letters.  And it seems to be an
14 attitude that because Mr. Rangel-Rubio was a hard worker, which
15 apparently he was, but just because he was a hard worker, that a
16 blind eye should be turned to everything else, that we shouldn't
17 be concerned by the fact that he has at least three times
18 illegally entered the United States and become a supervisor for
19 this company; we shouldn't be concerned by the fact that he
20 owned a piece of property over in Rincon that had numerous
21 illegals living there; we shouldn't be concerned by the fact
22 that this piece of property contained vehicles and trailers and
23 other outhouses where 14 firearms were seized during a search
24 warrant, that none of that should matter as long as a person is
25 a hard worker.

1    And that's just not so.  That's just not the way the
2    system should work.  You're supposed to not only be a hard
3    worker, but you're supposed to abide by the laws of the United
4    States.
5         Maybe sometime somebody can answer for this Court about
6    the circumstances of all the people that were working for that
7    company over in Effingham County and the company apparently not
8    caring whether they were legal or illegal and not caring whether
9    they had false identifications or not and not paying any of the
10   taxes and Social Security that they were supposed to pay for
11   this defendant and others like him.
12        Anything else in this case today, Mr. Berrigan?
13        MR. BERRIGAN:  No, Your Honor.
14        THE COURT:  Anything else, Ms. Groover?
15        MS. GROOVER:  No, sir.
16        THE COURT:  We'll be in recess.
17             (Proceedings concluded at 3:56 p.m.)
18                       - - -

17

1        CERTIFICATE OF OFFICIAL REPORTER

2

3            I, Kelly A. McKee, Registered Merit Reporter and
4    Certified Realtime Reporter, in and for the United States
5    District Court for the Southern District of Georgia, do hereby
6    certify that pursuant to Section 753, Title 28, United States
7    Code, that the foregoing is a true and correct transcript of
8    the stenographically reported proceedings held in the
9    above-entitled matter and that the transcript page format is in
10   conformance with the regulations of the Judicial Conference of
11   the United States.
12
13                        Dated this 16th day of July, 2018.
14
15
16
17
18                        _____
                          *Kelly McKeeDorsey*
19                        KELLY A. McKEE, CCR, RMR, CCP
20                        #2731